```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       -v-<br><br>JONATHAN BANYAN,<br><br>              Defendant. | 25-cr-208 (JSR)<br><br>OPINION |

JED S. RAKOFF, U.S.D.J.:

On July 9, 2025, the Court issued a "bottom-line" Order deciding defendant Jonathan Banyan's motions to suppress four search warrants. See ECF No. 26. In that Order, the Court denied as moot Banyan's motion to suppress a warrant authorizing a search of his residence; granted Banyan's motion to suppress evidence seized pursuant to a second warrant authorizing a search of his cellphone; granted Banyan's motion to suppress evidence seized pursuant to two further warrants authorizing searches of his Apple and Google accounts; and enjoined the Government from further executing the cellphone, Apple, and Google warrants. See id. This Opinion sets forth the reasons for the Court's Order.

I.   Background

On April 7, 2025, Banyan was arrested at a security checkpoint located at an entrance to the Daniel Patrick Moynihan United States Courthouse in Manhattan, New York. See ECF No. 1 at 2 ¶ 4. Banyan was at the courthouse that day for the first day of jury selection in a civil case in which he was the plaintiff. See ECF No. 14 at 1. Banyan was arrested by Deputy U.S. Marshals after courthouse security officers

1

discovered ammunition in a mesh bag that was located in one of the pockets of a backpack that Banyan was attempting to bring into the courthouse. See ECF No. 1 at 2 ¶ 4(c)-(d). The pocket in which the mesh bag containing the ammunition was found also contained documents bearing Banyan's name. See id. ¶ 4(e). Banyan allegedly stated that the backpack belonged to his cousin and that he had borrowed it from his cousin. See id. ¶ 4(d). Deputy U.S. Marshals seized Banyan's backpack and, following a search incident to Banyan's arrest, also seized his cellphone. ECF No. 14 at 1.

Banyan's attorney in his civil case subsequently provided the name of the individual from whom Banyan stated he had borrowed the backpack. See id.; ECF No. 1 at 2 ¶ 4(f). Deputy U.S. Marshal Oswaldo Cerrato spoke with an individual of that name, who is a former New York City Department of Corrections officer. See ECF No. 14 at 1; ECF No. 14-2 at 32 ¶ 7(g). The former corrections officer disclaimed knowing anyone by Banyan's name, identified a photograph of Banyan as "Joe," stated that he was not related to "Joe," said that he and "Joe" had not seen or spoken with each other for several months, and denied recently loaning a backpack to anyone. See ECF No. 14-2 at 19, 32 ¶ 7(g).

On April 7, 2025, the day of Banyan's arrest, Deputy Marshal Cerrato swore out a criminal complaint before United States Magistrate Judge Gary Stein, charging Banyan with one count of knowingly possessing ammunition after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). See ECF No. 1 at 1 ¶ 1. Among

2

other things, the complaint alleged that on or about October 25, 2006, Banyan had been convicted of criminal possession of a weapon in the second degree, in violation of N.Y. Penal Law § 265.03(2). See id. ¶ 3. On May 7, 2025, a grand jury indicted Banyan for violation of 18 U.S.C. § 922(g)(1). See ECF No. 6. Banyan pleaded not guilty before this Court on May 13, 2025, and is firmly scheduled to stand trial beginning July 21, 2025.

II. The Warrants

    A.  The Premises Warrant

On April 8, 2025, the Government sought a warrant to search Banyan's home, located in Brooklyn, New York, for evidence of the charged crime. See ECF No. 14-2 at 2-11. Deputy Marshal Cerrato signed the warrant affidavit, and United States Magistrate Judge Joseph A. Marutollo of the Eastern District of New York issued the requested warrant on April 8, 2025. See id. at 14-17. In executing the warrant, law enforcement personnel recovered from Banyan's apartment a hospital bracelet bearing his name and four police property clerk forms also bearing his name. See ECF No. 14 at 4.

On June 20, 2025, Banyan moved to suppress evidence obtained from the search of his apartment. See ECF No. 13. On June 27, 2025, while Banyan's motion was pending, the Government informed the Court that it does not intend to offer any of the seized items as evidence at trial, thereby rendering the motion moot. See ECF No. 16.

B.   The Cellphone Warrant

On April 18, 2025, the Government sought a warrant to search the contents of Banyan's cellphone. See ECF No. 14-2 at 27-39. In an affidavit supporting the warrant application, Deputy Marshal Cerrato stated, among other things, that: (1) Banyan was in possession of the cellphone, and was using it, around the time of his arrest, see id. at 33 ¶ 9(a); (2) an element of the charged crime is Banyan's knowing possession of ammunition, and Banyan claimed that he had borrowed the backpack in which the ammunition was found from his cousin, see id. at 33 ¶ 9(b); (3) people "routinely store 'selfies' and other pictures of themselves on their cellphones," and any photograph of Banyan with the backpack or evidence concerning Banyan's use or ownership of the backpack, mesh bag, or ammunition would be evidence of the charged crime, see id. at 33 ¶ 9(c); (4) because "people often use their phones to correspond with and concerning their relatives," communications or the absence of communications between Banyan and the individual identified as his cousin would be evidence of the charged crime, see id. at 33-34 ¶ 9(d); and (5) "people who unlawfully possess contraband like ammunition often use their phones" to view images of contraband, conduct web searches about contraband, or communicate with others about contraband, see id. at 34 ¶ 9(e). Deputy Marshal Cerrato affirmed these statements based on both his "review of surveillance video footage from the courthouse" and his "training and experience." See id. at 33-34 ¶ 9(a)-(e). Deputy Marshal Cerrato opined that there was

4

probable cause to believe that Banyan's cellphone contained various categories of evidence of the charged crime. See id.

United States Magistrate Judge Sarah L. Cave issued the requested warrant for Banyan's cellphone on April 18, 2025. See id. at 41-44. The warrant authorized the review of all electronically stored information on the cellphone for all of the nine broad categories of evidence enumerated in Deputy Marshal Cerrato's application. See id. Those categories included, but were not limited to, communications about the charged crime; evidence that Banyan's possession of ammunition was knowing; evidence concerning the identity or location of the owners or users of Banyan's cellphone, the backpack, the mesh bag, and the ammunition; images, search histories, and other electronic data regarding possession of ammunition; and communications with Banyan's "confederates." See id. The warrant did not impose any temporal limitations whatsoever on the data to be searched. See id.

On June 20, 2025, Banyan moved to suppress evidence obtained pursuant to the cellphone warrant. See ECF No. 13. At a status conference held on June 24, 2025, the Government represented to this Court that it had not, as of that time, been able to access the contents of Banyan's cellphone. See ECF No. 18. Accordingly, the Court reserved decision on Banyan's motion.

Between June 24 and June 30, 2025, and in the course of executing the cellphone warrant, the Government obtained the number associated

5

with Banyan's cellphone. See ECF No. 17-1 at 18.[1] The Government does not represent that it could have obtained Banyan's cellphone number apart from its partial execution of the cellphone warrant or that it sought to do so.

C. The Apple and Google Warrants

On June 30, 2025, the Government sought warrants to search certain Apple and Google accounts associated with Banyan's cellphone number. See id. at 1-26. Based on an affidavit from Deputy Marshal Cerrato setting forth a putative basis for probable cause similar to the basis that Deputy Marshal Cerrato had provided for the cellphone warrant, Magistrate Judge Stein issued the requested warrants on June 30, 2025. See id. at 27-41. The warrants each authorized the Government to search records to be produced by Apple and Google, respectively, for eleven broad categories of evidence, which substantially overlap with the categories of evidence that were enumerated in the cellphone warrant. See id. at 32-34, 39-41.

On July 1, 2025, Banyan informed the Court that he would be filing a further motion to suppress evidence obtained pursuant to the warrants authorizing searches of his Apple and Google accounts. The Court

---

[1] Banyan contends that the Government obtained his cellphone number in violation of an order of this Court. See ECF No. 20 at 2-3. Banyan is incorrect. At the June 24, 2025 status conference, the Government represented that it was continuing to access Banyan's cellphone pursuant to the relevant warrant. See ECF No. 18 at 4. The Government obtained Banyan's cellphone number at some point between June 24 and June 30, 2025. See ECF No. 17-1 at 18. The Court did not order the Government to cease its efforts to access Banyan's cellphone until July 1, 2025. See ECF No. 24.

granted Banyan's application for interim relief and enjoined the Government from continuing to access Banyan's phone and from executing the Apple and Google warrants while Banyan's motions were pending.

On July 7, 2025, Banyan's motions were fully briefed. See ECF Nos. 14 ("Mot."), 17 ("Gov't Opp'n"), 18 ("Reply"). The Court subsequently granted permission for the Government to file a surreply, which it did on July 9, 2025. See ECF No. 24. The Court issued the bottom-line Order on Banyan's motions on July 9, 2025. See ECF No. 26.

III. Discussion

Banyan contends that each of the warrants lacked probable cause, was overbroad, and lacked sufficient particularity. After setting forth the relevant legal standards, the Court addresses each of the challenged warrants in turn.

    A.    Legal Standards

Under the Fourth Amendment, "a search warrant must, inter alia, set forth evidence establishing probable cause to believe a crime has been committed and that evidence of that crime can be found in what is to be searched." United States v. Weigand, 482 F. Supp. 3d 224, 240 (S.D.N.Y. 2020). Probable cause "is a flexible, common-sense standard, which requires a case-by-case analysis of the totality of the circumstances." Id. (cleaned up). Probable cause "does not demand hard certainties, but it does require more than a 'hunch.'" United States v. Lauria, 70 F.4th 106, 128 (2d Cir. 2023) (cleaned up). Specifically, the totality of the circumstances must demonstrate that there is a "nexus" between alleged criminal activity and the place to be searched

7

-- a nexus which may be established by "reasonable inference[s] from the facts presented based on common sense and experience." Weigand, 482 F. Supp. 3d at 240 (quoting United States v. Singh, 390 F.3d 168, 182 (2d Cir. 2004)).

Both the Supreme Court and the Second Circuit have been vigilant about ensuring that searches of digital assets are supported by probable cause. Such searches "typically expose to the government far more than the most exhaustive search of a house" because cellphones and digital accounts contain "a broad array of private information never found in a home in any form -- unless the phone is." Riley v. California, 573 U.S. 373, 396-97 (2014); see also United States v. Galpin, 720 F.3d 436, 445-47 (2d Cir. 2013); United States v. Skyfield, No. 23 Cr. 569, 2023 WL 8879291, at *15 (S.D.N.Y. Dec. 22, 2023).

A warrant supported by probable cause must also satisfy the Fourth Amendment's particularity requirement by (1) identifying the specific offense for which probable cause has been established, (2) describing the place to be searched, and (3) specifying the items to be seized by their relation to the alleged criminal conduct. See United States v. Ulbricht, 858 F.3d 71, 99 (2d Cir. 2017), overruled on other grounds by Carpenter v. United States, 585 U.S. 296 (2018). The warrant's description of the items to be seized need not be "perfect," and given the nature of electronic evidence, "search warrants covering digital data may contain some ambiguity." Id. at 100 (cleaned up). But this flexibility does not extend to permitting an unlimited "fishing expedition" into a cellphone's contents. See id. at 99-100.

8

The probable cause and particularity requirements intersect in the doctrine of overbreadth. A warrant is "defective if it is broader than can be justified by the probable cause upon which the warrant is based." Galpin, 720 F.3d at 446. This applies to temporal limitations, as to others. While courts in this District have sometimes upheld the wholesale copying of devices or electronic accounts without temporal restrictions, see, e.g., United States v. Ray, 541 F. Supp. 3d 355, 399-400 (S.D.N.Y. 2021), a warrant's temporal limitation, or the absence of one, may be a factor in determining overbreadth, see, e.g., United States v. Wey, 256 F. Supp. 3d 355, 381 (S.D.N.Y. 2017).

B. The Premises Warrant

As noted above, on June 27, 2025, the Government represented that it does not intend to offer into evidence at trial any items seized from the search of Banyan's apartment. Banyan and the Government agree that any dispute about the validity of the warrant authorizing that search is therefore moot. See ECF No. 16; ECF No. 20 at 2 n.2. Accordingly, in its bottom-line Order, the Court denied as moot Banyan's motion to suppress evidence seized pursuant to that warrant.

C. The Cellphone Warrant

As to the warrant authorizing a search of Banyan's cellphone, Banyan contends that Deputy Marshal Cerrato's affidavit "failed to demonstrate a 'sufficient nexus'" between Banyan's "alleged possession of ammunition and his cellphone," Mot. at 10-15; Reply at 4-9, so that there was an insufficient showing of probable cause. Banyan also

9

contends that the warrant was overbroad and lacked sufficient particularity. Mot. at 15-21.

Banyan is correct that the warrant was unsupported by probable cause. Each of three key averments in Deputy Marshal Cerrato's affidavit is missing case-specific evidence establishing a nexus between the charged crime and Banyan's cellphone. Rather, Deputy Marshal Cerrato's averments rely on "blanket generalizations about how people who commit crimes act." See United States v. Silva, No. 23 Cr. 204, 2024 WL 3488305, at *7 (S.D.N.Y. July 19, 2024) (alteration adopted). Numerous courts in this Circuit have held that such "blanket generalizations about the widespread use of cellphones are not sufficient to demonstrate probable cause." Id. at *8 (collecting cases); see also, e.g., United States v. Garcia, No. 20 Cr. 58, 2023 WL 4850553, at *7-9 (D. Conn. July 28, 2023); United States v. Santos, No. 23 Cr. 436, 2024 WL 3566983, at *15 (E.D.N.Y. July 29, 2024). Indeed, as Banyan points out, if it were sufficient for an officer merely to aver that a defendant committed a charged crime and the defendant's phone was present at the scene, then "an agent need only speculate that evidence of the offense may be found in that individual's electronic device to secure a warrant to search their [entire] electronic footprint." Reply at 8-9.

First, Deputy Marshal Cerrato averred that because "people with cellphones routinely store 'selfies' and other pictures of themselves on their cellphones," Banyan's cellphone is likely to contain photographs of him, which might, hypothetically, contain photographs

10

of Banyan wearing the backpack here at issue. See ECF No. 14-2 at 33 ¶ 9(c). Further, according to Deputy Marshal Cerrato, photographs of Banyan "wearing the Backpack on other occasions" and "any evidence" of Banyan's "purchase, use, or ownership of the Backpack, the Mesh Bag, or the Ammunition" would be evidence of the charged crime. See id. But Deputy Marshal Cerrato offered no case-specific evidence even remotely suggesting that there was probable cause to believe that the cellphone contained photographs of Banyan wearing the backpack, let alone evidence that there was probable cause to believe that it would contain evidence of his purchase of the backpack, the mesh bag, and so forth. Deputy Marshal Cerrato's generalized assertions, based on unspecified aspects of his "training and experience," see id., are plainly insufficient, "without any other factual nexus," to establish probable cause, see United States v. Guzman, No. S5 97 Cr. 786, 1998 WL 61850, at *4 (S.D.N.Y. Feb. 13, 1998) ("Permitting a search warrant based solely on the self-avowed expertise of a law-enforcement agent, without any other factual nexus to the subject property, would be an open invitation to vague warrants authorizing virtually automatic searches of any property used by a criminal suspect." (cleaned up)).

Second, Deputy Marshal Cerrato averred that because "people often use their phones to correspond about and concerning their relatives," evidence on Banyan's cellphone of communications or the absence of communications with the individual who allegedly lent Banyan the backpack would be evidence of the charged crime. ECF No. 14-2 at 33-34 ¶ 9(d). This averment suffers from the same flaws as the previous

11

one. Deputy Marshal Cerrato points to no case-specific evidence that Banyan used his phone to communicate with the relevant individual. In fact, evidence to the contrary is before the Court. Notes of Deputy Marshal Cerrato's conversation with the former corrections officer indicate that the former officer stated that "I don't call [the individual the officer identified as 'Joe']." Id. at 19. Deputy Marshal Cerrato's mantra-like invocation of his "training and experience," id. at 33-34 ¶ 9(d), is again insufficient to establish probable cause.

Third, and finally, Deputy Marshal Cerrato averred that "people who unlawfully possess contraband like ammunition often use their phones" to take and exchange photographs of contraband, research contraband, and acquire contraband, among other things. Id. at 34 ¶ 9(e). This averment, which is even more generalized than the others, is again unsupported by any actual evidence remotely suggesting that Banyan, specifically, did any of the things that Deputy Marshal Cerrato averred "people who unlawfully possess . . . ammunition" typically do. See id.

Thus, none of the averments supports Deputy Marshal Cerrato's conclusion that there is probable cause to believe that Banyan's cellphone contains evidence of the charged crime. Indeed, it really comes down to his suggesting that, because people keep lots of stuff on their cellphones, a search of their cellphones might turn up something of interest. This makes a total mockery of the requirement of probable cause.

Resisting this conclusion, the Government emphasizes that Banyan was observed using his cellphone at the time he was allegedly unlawfully possessing ammunition, see Gov't Opp'n at 14-15. But the Government fails to show why that matters in this case. Indeed, the Government implicitly concedes that Banyan was not using his cellphone to perpetrate the charged crime. See id. The Government may be correct that certain data that might conceivably be found on Banyan's phone "would constitute probative evidence." See id. at 15. But it fails to show that, based on the actual "facts presented" in the warrant affidavit, there is a "nexus" between Banyan's phone and the charged crime. See Weigand, 482 F. Supp. 3d at 240.

As far as the Government's reliance on Cerrato's "training and experience," while it is certainly reassuring to learn that it was because of his professional training and experience that Cerrato learned that people commonly use phones to take selfies -- what a discovery! -- this insipid generalization is hardly sufficient to support rummaging at will through a cellphone's photographs. Indeed, as the defense correctly notes, even those cases that have emphasized an officer's training and experience in support of a search warrant have typically included not only far more specific and technical training than that involved here, but also specified claims of factual evidence supporting probable cause. See Reply at 7-8; cf. Skyfield, 2023 WL 8879291, at *15 (denying suppression motion where affidavit "provided specific evidence, not merely general observations about how individuals involved in firearm offenses use their cellphones").

13

Finally, the Government marshals cases standing for the proposition that "substantial deference" is due to magistrate judges' findings of probable cause. See Gov't Opp'n at 10-11. Banyan's case, however, is not a close or "marginal case[]" in which the general "preference to be accorded to warrants" should govern. See Rivera v. United States, 928 F.2d 592, 602 (2d Cir. 1991); see also United States v. Travisano, 724 F.2d 341, 345 (2d Cir. 1983). As shown above, Deputy Marshal Cerrato's affidavit was based on broad generalizations, gross speculations, and hunches untethered to any actual evidence, and thus there was no "substantial basis for the finding of probable cause." See United States v. Wagner, 989 F.2d 69, 72 (2d Cir. 1993).

For all these reasons, the warrant to search Banyan's cellphone lacked probable cause and was issued in violation of the Fourth Amendment. While the Court is also of the view that the warrant was grossly overbroad and lacking in particularity -- that it was, in fact, a thinly disguised fishing expedition -- the Court need not reach these additional defects, since the lack of probable cause is by itself sufficient to invalidate the warrant.

D. The Apple and Google Warrants

Banyan contends that because the warrants to search his Apple and Google accounts were based, in part, on the cellphone number obtained from the improperly obtained cellphone warrant, evidence seized pursuant to those warrants must also be suppressed. See Reply at 9-11. Banyan is again correct.

14

When presented with a warrant obtained on the basis of improperly obtained evidence "the Court must 'excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant.'" United States v. Williams, 365 F. Supp. 3d 343, 350 (S.D.N.Y. 2019) (quoting United States v. Reilly, 76 F.3d 1271, 1282 n.2 (2d Cir. 1996)). Here, the Government makes no argument that it had any basis to identify Banyan's Apple or Google accounts other than because it was able to obtain Banyan's cellphone number "through execution of the Cellphone Warrant." See Gov't Opp'n at 8; ECF No. 17-1 at 18 ¶ 17(b)-(c). Accordingly, without the tainted evidence, the Government could not conceivably have established probable cause for the issuance of the warrants for Banyan's Apple and Google accounts.[2] Therefore, any evidence obtained pursuant to the Apple and Google warrants must also be suppressed.

It further follows that, because the warrants were improperly obtained in violation of the Fourth Amendment, the Government, as set

---

[2] Even had the Government obtained Banyan's cellphone number through some means other than the partial execution of the cellphone warrant, Deputy Marshal Cerrato's affidavit in support of the Apple and Google warrants suffers from the same deficiencies as his affidavit in support of the cellphone warrant. Compare ECF No. 17-1 at 20-21 ¶¶ 19-23 (averments supporting Apple and Google warrant application) with ECF No. 14-2 at 33-34 ¶ 9 (averments supporting cellphone warrant application). Moreover, although the Court need not reach Banyan's arguments regarding the alleged overbreadth and lack of particularity of the Apple and Google warrants, the Court observes that the descriptions of evidence to be seized pursuant to those warrants are at least as broad as the descriptions of evidence to be seized pursuant to the cellphone warrant. Compare ECF No. 17-1 at 32-34, 39-41 with ECF No. 14-2 at 43-45.

15

forth in the bottom-line Order, must be enjoined from further executing any of the warrants hereby declared unlawful. See, e.g., Davis v. United States, 564 U.S. 229, 236-38 (2011).

In sum, it is for the foregoing reasons that the Court issued its bottom-line Order of July 9, 2025, which is hereby confirmed.

New York, New York
July 14, 2025

JED S. RAKOFF, U.S.D.J.

16