

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

November 24, 2025

<u>BY ECF</u>
The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *United States v. Jonathan Banyan*, 25 Cr. 208 (JSR)

Dear Judge Rakoff:

The Government respectfully submits this letter in advance of the sentencing of Jonathan Banyan, scheduled for December 1, 2025. For the reasons explained below, the Government respectfully submits that a sentence of 18 months would be sufficient but not greater than necessary to achieve the goals of sentencing.

I.      **Background**

A.  **Offense Conduct**

The defendant has been convicted of a felony and cannot lawfully possess guns or ammunition. Nevertheless, he chose to do so. Specifically, on the morning of April 7, 2025, the defendant walked into the Daniel Patrick Moynihan United States Courthouse at 500 Pearl Street (the "Courthouse") with 18 bullets in his backpack. (PSR ¶ 8).

When the defendant entered the security checkpoint, he removed his backpack and placed it on the conveyor belt. The court security officer ("CSO") who was operating the x-ray machine observed what appeared to be bullets in the defendant's backpack, so the CSO ran the backpack through the machine multiple times. (PSR ¶ 7).

The defendant realized what was happening: the CSO had seen his bullets on the x-ray machine. To cover up his crime, the defendant reached into the backpack and grabbed the bag of bullets, which he tried to pocket. But the CSOs saw him and directed him to hand the bag over. Inside were four rounds of Winchester 9-millimeter Luger ammunition, eleven rounds of Cascade Cartridge Inc. 0.22 caliber rimfire ammunition, two rounds of Cascade Cartridge Inc. 0.25 caliber ammunition, and one round of 9-millimeter Sellier & Belloit ammunition. (PSR ¶¶ 6-8).

In a further effort to cover up his criminal possession of ammunition inside a courthouse, the defendant immediately and repeatedly lied. In the security lane, he promptly picked a fall guy—he falsely claimed that the backpack belonged to his professed cousin, who was a New York

Department of Corrections officer. Later, the defendant's civil attorney spoke to law enforcement on the defendant's behalf and told him that the cousin from whom he had borrowed the backpack was a corrections officer at Rikers Island named Omar Alston. This was a lie. (PSR ¶ 9).

The defendant's attempt to blame an innocent third party at the time of the offense had serious consequences in that it imposed significant burdens on Alston, who had been diagnosed with a serious illness and was in extreme pain. In the run-up to trial, Alston was interviewed by a case agent in a hospital room. On another occasion, Alston was in too much pain to speak over the phone. Alston ultimately sat for a Rule 15 deposition in his own home just three days before a life-threatening medical procedure. The deposition was so draining that afterward, before counsel had even left the home, Alston had to lie down on a couch.

**B. Procedural History**

On May 7, 2025, a grand jury sitting in this district returned an indictment (the "Indictment") charging the defendant in one count with possessing a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g)(1).

On July 24, 2025, following a four-day trial, the jury returned a guilty verdict.

**C. The Defendant's Criminal History**

The defendant has a long criminal history stretching back to childhood. On January 29, 2003 (age 16), the defendant committed assault in the third degree. He pled guilty, was adjudicated a youthful offender, and was sentenced to three years' probation. On August 4, 2003, his probation was revoked for an unknown violation, and he was sentenced to 60 days' imprisonment. (PSR ¶ 27).

On April 11, 2004 (age 17), the defendant joined a group of approximately 15 people in stealing items from a supermarket in Manhattan. On the way out of the store, the perpetrators pushed a security guard into a door, injuring her thumb and shoulder. When law enforcement later encountered the defendant, he tried to evade arrest. The defendant pled guilty, was adjudicated a youthful offender, and was sentenced to five years' probation. (PSR ¶ 28).

On December 21, 2005 (age 19), the defendant took a loaded gun that another person handed to him. When officers approached, the defendant fled into a nearby alley and fired toward the officers, striking one officer in his ballistic vest. The defendant was arrested and failed to notify his probation officer of the arrest. The defendant also violated other conditions of his probation, including by failing to maintain employment or enroll in a GED program. (PSR ¶ 28).

On February 24, 2006 (age 19), the defendant once again possessed a loaded gun and fired in the direction of police officers who were performing their official duties; he also possessed marijuana. Following a jury trial, the defendant was convicted of criminal possession of a weapon in the second degree, and on November 9, 2006, he was sentenced to seven years' imprisonment, to be followed by five years of post-release supervision. (PSR ¶ 29).

While incarcerated for his 2006 offense, the defendant served as a porter but was removed from that post for disciplinary reasons. The defendant's many disciplinary violations while

incarcerated included "fighting, refusing to obey an order, violent conduct, creating a disturbance, harassment, lewd conduct, drug use, possessing contraband, and gang activity." (PSR ¶ 29).

On October 26, 2012 (age 26), the defendant was paroled. In or about November 2014, agents of the Maine Drug Enforcement Agency were executing a search warrant in Maine, where they encountered the defendant. He provided multiple fake names and then declined to speak with officers. A woman in the apartment admitted that she had brought cocaine hydrochloride to the apartment and that she and the defendant (whom she called "J-blood") were present when a third person cooked the cocaine hydrochloride into crack cocaine. Defense counsel alleged that the defendant was just visiting and did not know the woman; the case was dismissed. (PSR ¶ 34).

On March 20, 2016 (age 29), the defendant was arrested on charges that included assault on a police officer, fireman, or EMT; resisting arrest; and criminal possession of stolen property. After a jury trial, the defendant was convicted of assault and resisting arrest and was sentenced to five years' imprisonment. On June 2, 2017, the defendant began to serve a term of imprisonment for this offense (which also constituted a parole violation). On November 17, 2020, the defendant completed his term of imprisonment. On appeal, however, the conviction was vacated based on a legal error in the jury instructions, and the case was remanded for a new trial. On or about September 9, 2022, the case was dismissed on speedy trial grounds. (PSR ¶¶ 29, 35).

### D. The Guidelines Calculations

The Government agrees with the U.S. Probation Office's Guidelines calculation. Pursuant to U.S.S.G. § 2K2.1(a)(6), the base offense level is 14 because the defendant was a prohibited person at the time the defendant committed the instant offense. (PSR ¶ 17).

As explained by the Probation Office, only one of the defendant's multiple convictions is accounted for in the Guidelines calculations: his October 25, 2006, conviction for criminal possession of a weapon in the second degree in violation of New York Penal Law Section 265.03(2). Pursuant to U.S.S.G. § 4A1.1(a), the defendant received three criminal history points for this sentence. (PSR ¶ 29). The defendant's criminal history category is therefore II.

Accordingly, the Guidelines range is 18 to 24 months' imprisonment. (PSR ¶ 78).

## II.    Discussion

### A. Applicable Law

In fashioning an appropriate sentence for the offender and the offense, the Court must calculate the United States Sentencing Guidelines range and must consider all the factors set forth in 18 U.S.C. § 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. §§ 3553(a)(l)–(7). *See Gall v. United States*, 552 U.S. 38, 50 & n.6 (2007).

After considering these factors, a court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant;
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B. Argument

Several factors counsel in favor of an 18-month term of incarceration in this case.

Whenever someone knowingly possesses ammunition after a felony, that offense conduct is serious. Congress has reasonably concluded that felons may not carry bullets, and the defendant is a textbook example of why that prohibition is necessary. He has a long history of criminal conduct, including not only violence but also, more specifically, gun-related crimes targeting law enforcement.

His criminal conduct began young, when he committed third-degree assault under unknown circumstances at age 16. That arrest and conviction did not deter him. The following year, he joined a mob of approximately 15 people who brazenly robbed a Manhattan supermarket by stealing products off the shelves and shoving a security guard, injuring her.

At age 19, in December 2005, the defendant's criminal conduct escalated significantly. The defendant was seen taking a gun from someone, and when officers approached, he fired toward the officers, striking one in his ballistic vest. Just a few months later, in February 2006, the defendant *did it again*: he again shot a gun in the direction of officers, though this time, fortunately, there is no indication that he hit anyone. He was sentenced to seven years' imprisonment. While incarcerated, he racked up many disciplinary violations, including fighting, violence, and gang activity, among many others.

The defendant was paroled in 2012, at the age of 26, but he had not aged out of criminal activity. By the defendant's own acknowledgment, he was involved in what he called "gang banging." (PSR ¶ 45). In 2014, he was found in an apartment where crack cocaine was cooked, though the charges were dropped. And then in 2016, the defendant was arrested on charges relating to the alleged possession of stolen property and a confrontation with police officers. These charges were ultimately dismissed on speedy trial grounds, and the Government does not ask the Court to rely on them except insofar as they show a continued history of confrontations with law enforcement.

4

When someone with this background illegally carries ammunition into the courthouse on the day when he was scheduled to confront police officers at trial, the danger is obvious. The Government recognizes that there is no indication of *why* the defendant possessed eighteen bullets at the courthouse. But given the defendant's criminal history, it is dangerous for him to possess ammunition at any time—let alone when he is walking into a federal courthouse. Because the defendant chose to possess ammunition despite his criminal history, a substantial sentence is necessary to afford just punishment, to reflect the nature and circumstances of the offense, and to ensure adequate specific deterrence.

General deterrence also compels a substantial prison term, particularly given the location where the defendant possessed these bullets: the federal courthouse. The courthouse is a sacred space. When a litigant walks into that space with ammunition, this creates an unacceptable risk that criminal and civil trials could be used to carry out physical violence. Mitigating that risk requires a sentence that sends the message that whenever someone knowingly and unlawfully possesses bullets inside the courthouse, whatever the reason, that person will face a substantial prison term.

A final aggravating fact that counsels in favor of a substantial sentence is the defendant's victimization of Omar Alston. When CSOs saw the defendant's bullets, he had the right to stand silent, insist on a trial, and put the Government to its proof.  Instead, he lied, blaming an innocent third party. This inflicted meaningful harm on Alston while he was confronting a life-threatening illness. Alston was in substantial pain during interviews with the Government, and his Rule 15 deposition left him weak and drained. Alston's testimony made it clear that he had tried to help the defendant in the past, including by finding him work. The defendant repaid him by dragging him into a case that he had nothing to do with and robbing him of valuable time that should have been spent with loved ones. By lying to cover up his crime, the defendant inflicted serious harms on Alston. The Court should weigh this conduct in assessing the nature and seriousness of the offense and the need for just punishment.

### III. <u>Conclusion</u>

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence of 18 months' imprisonment.[1]

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:

James Mandilk
Ariana Bloom
Nicholas Bradley
Assistant United States Attorneys
212-637-2453

cc:    Counsel of Record (by ECF)
U.S. Probation Officer Robert Flem (by email)

---

[1] The Government respectfully requests that, for each special condition of supervised release the Court intends to impose, the Court briefly state its reasons for concluding that the special condition is "reasonably related" to at least one of the factors set forth in U.S.S.G. § 5D1.3(b). *See, e.g.*, *United States v. Sims*, 92 F.4th 115 (2d Cir. 2024) (vacating special condition and remanding for district court to provide sufficient explanation for imposition of condition); *United States v. Oliveras*, 96 F.4th 298 (2d Cir. 2024) (same); *United States v. Jimenez*, No. 22-1022, 2024 WL 1152535 (2d Cir. Mar. 18, 2024) (summary order) (same).

The Government also requests that the Court enter an order of forfeiture as to the eighteen round of ammunition unlawfully possessed by the defendant. A proposed order of forfeiture is attached hereto.